UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADRIAN WARREN LEON,

Petitioner,

-vs-                                                    Case No.  8:09-cv-1410-T-17MAP

SECRETARY, DEPT. OF CORRECTIONS,

Respondent.

_____/

## ORDER

This cause is before the court on Adrian Warren Leon's timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus (hereinafter "Petition" or "petition"). (Doc. 1). After he filed the petition,  Leon retained counsel who appeared in this case and adopted Leon's pro se pleadings. (Docs. 7, 8).  Respondent filed a response to the petition (Doc. 13) and Leon filed a pro se reply to the response after the Court granted Leon's motion to dismiss retained counsel. (Docs. 27, 29). Leon challenges his trial-based convictions and sentences for two counts of lewd or lascivious exhibition, which arise out of the Thirteenth Judicial Circuit, Hillsborough County, Florida in case no. 01-5969.

A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

Background

Leon was found guilty after a jury trial held October 15-16, 2001, of two counts of lewd or lascivious exhibition as charged in case no. 01-5969. Adjudicated guilty in accordance with the verdicts, Leon was sentenced on November 15, 2001, to fifteen years incarceration on count one. On count two, Leon was sentenced to a consecutive prison

term of twelve years. In addition, consecutive terms of two years of community control and five years probation were imposed on each count. On July 25, 2003, the state district court of appeal per curiam affirmed the conviction and sentence in case no. 2D01-5564. *Leon v. State*, 865 So.2d 496 (Fla. 2d DCA 2003)[table]. Rehearing was denied November 13, 2003. Leon did not pursue certiorari review in the United States Supreme Court.

## STANDARDS OF REVIEW

Leon's petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA affects this Court's review of both factual findings and legal rulings entered by the state courts in the rejection of Leon's federal claims.

Pursuant to 28 U.S.C. § 2254(e)(1), this Court's review of state court factual findings must be highly deferential; such findings are presumed correct, unless rebutted by a petitioner with clear and convincing evidence. *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Similarly, the legal rulings of claims adjudicated in state courts only provide a basis for federal relief where the state court adjudication was either "contrary to" clearly established federal law as determined by the United States Supreme Court, or involved an "unreasonable application" of such law. See 28 U.S.C. § 2254(d)(1); *Haliburton v. Secretary, Dept. of Corrections*, 342 F.3d 1233, 1238 (11th Cir. 2003).

In [*Terry*] *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed these standards at length. The Court explained that a state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that

contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. The question is whether the state court correctly identified the proper rule of law to be applied. *Robinson*, 300 F.3d at 1344-45; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is not "contrary to" established federal law even if a federal court might have reached a different result relying on the same law. *Williams*, 529 U.S. at 405-06; *Robinson*, 300 F.3d at 1344-45.

A state court ruling is an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. A federal court does not independently review the correctness of the state court adjudication; the "unreasonable application" analysis requires a showing that the state court ruling is not simply incorrect or erroneous, but objectively unreasonable. *Williams*, 529 U.S. at 409-410; *Robinson*, 300 F.3d at 1345; *Putman*, 268 F.3d at 1241. The measuring stick for both the "contrary to" and "unreasonable application" assessments of the state court merits adjudication is "clearly established federal law," which refers only to the holdings, and not dicta, of the United States Supreme Court at the time of the relevant state law decisions. *Williams*, 529 U.S. at 412; *Putman,* 268 F.3d at 1241.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where error is determined, on habeas review, to exist. This test is "less onerous" than the harmless error standard enunciated in *Chapman v. California*, 386 U.S.

3

18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in this case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

AEDPA requires greater deference to state court decisions than the traditional de novo standard of review; Leon has the burden to overcome the presumption of correctness attached to state court factual findings or to establish that the state court legal rulings were contrary to, or unreasonable applications of, established federal law. *Crawford,* 311 F.3d at 1295.

## STANDARD FOR PROCEDURAL DEFAULT/PROCEDURAL BAR

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to

4

give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor

5

external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice,"  Leon must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982). Leon must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478,  495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at

324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324.   This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"[t]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

## STATE LAW CLAIMS

Generally, a claim alleging a violation of state law is not subject to review by a petition for the writ of habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *McCullough*

*v. Singletary*, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent raised in a federal habeas petition, a federal question is not exhausted in state court if raised in state court only as a state law claim. *Anderson v. Harless*, 459 U.S. 4, 6-8 (1982). A federal claim not "fairly presented" to a state court is procedurally defaulted for federal habeas purposes. *Baldwin v. Reese*, 541 U.S. 27 (2004).

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## EVIDENTIARY HEARING

Leon does not expressly request an evidentiary hearing on any particular claim in his petition or motion for an evidentiary hearing.  He makes no attempt to identify or analyze any right to further evidentiary development of his habeas claims. To the extent Leon is requesting a hearing to offer support for his claims, he does not meet his burden of demonstrating any entitlement to expand the record in this case. This Court's ability to consider new facts to support Leon's federal claims is limited by 28 U.S.C.§ 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim

unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The limitations on factual development imposed by § 2254(e)(2) were addressed in *[Michael] Williams v. Taylor*, 529 U.S. 420, 433-35 (2000). In that case, the Court concluded that § 2254(e)(2) imported a "threshold standard of diligence," requiring a prisoner to have reasonably attempted, in light of the information available at the time, to investigate and pursue a claim in state court. The Court held, on the facts presented, that federal discovery was authorized on a claim of juror and prosecutorial misconduct which petitioner Williams had no reason to know about in state court, but no further factual development was available as to the claim on which Williams had been on notice in state court. *Williams*, 529 U.S. 438-445.

The state trial court conducted an evidentiary hearing on Leon's postconviction claims; he has never alleged otherwise. The state trial court's findings are "presumed to be correct" (28 U.S.C. 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . . ."(28 U.S.C. § 2254(d)(2)).

There are no claims in the habeas petition which permit further factual development. Leon does not acknowledge the § 2254(e)(2) bar to his presentation of additional facts. He has not explained his failure to develop the facts in state court, or even identified in general

terms any new evidence he seeks to present. He has failed to establish which exception

to the general rule prohibiting further hearings in habeas proceedings authorizes additional

evidence in this case. *See generally, Breedlove v. Moore*, 279 F.3d 952, 959-60 (11th Cir.

2002) (discussing stringent limitations placed on federal hearings under AEDPA), *cert.*

*denied*, 537 U.S. 1204 (2003). No federal evidentiary hearing is warranted on Leon's

petition.

## DISCUSSION

Given that Leon has not challenged Respondent's statement of the procedural

history of this case, a recitation of the procedural history of Leon's criminal conviction is

unnecessary. The issues are fully briefed and the case is ripe for decision. The record is

fully developed and the claims of the petition raise issues of law, not issues of fact.  *See*

*Breedlove v. Moore*, 279 F.23 952, 959 (11th Cir. 2002).

Because of the deference due the state court's findings of fact and conclusions of

law, the state courts' determination of Leon's claims largely governs review of those same

claims.  Consequently, in considering the reasonableness of the state courts'

determinations, the review of Leon's claims includes a recitation of the pertinent state court

proceedings.

## GROUND ONE

MANIFEST INJUSTICE/ACTUAL INNOCENCE:  THE STATE COURT
ERRED WHEN IT DENIED PETITIONER'S MOTION TO SUPPRESS THE
IDENTIFICATION AND SHIRT THAT WERE UNLAWFULLY SEIZED, AS
PETITIONER WAS ARRESTED IN HOME WITHOUT A WARRANT,
EXIGENT CIRCUMSTANCES, NOR VALID CONSENT.

Leon claims the state trial court erred in denying his motion to suppress "the

identification" and a shirt. According to Leon, the shirt was unlawfully seized without a

warrant, exigent circumstances, or valid consent. (Doc. 1 at 6) In his supporting facts, Leon asserts that Officer Buttiglire, while investigating the lewd and lascivious exhibition offenses for which Leon now stands convicted, learned of the location of Leon's apartment complex. Leon points to the officer's report, which indicated the officer learned from the security guard that the suspect vehicle was parked there and Leon was at home. Leon alleges that after backup arrived, the officers knocked at his apartment, and his brother, Andrew Leon answered, and the officers asked to speak with [Adrian] Leon. (Dkt. 1 at 6)

Leon alleges his brother responded positively, closed the door, and woke up Leon, who put on a bathrobe and went to the door. Id. Leon contends he was surprised to learn the officers had "let themselves in" and accuses a corporal of threatening his girlfriend in order to obtain consent to search Leon's bedroom. Leon alleges the threat was the police would impound her car because it was the suspected vehicle. (Doc. 1 at 6)

Leon's counsel filed a suppression motion seeking to suppress his photograph used in a photographic display and also the shirt obtained from his residence. The motion was addressed at a pretrial hearing on October 1, 2001, and testimony was taken on October 11, 2001, before the Honorable Jack Espinosa, Jr.

On Friday, October 12, 2001, Leon's counsel filed an amended suppression motion. (Resp. Ex. 1, V 1 R 27-29) That following Monday, October 15, 2001, the hearing resumed with Leon's counsel advising the defense would like to call Leon. A bench conference ensued in which his counsel advised that Leon's brother, Andrew, had warrants out for his arrest and would be arrested if called to testify. The prosecutor made clear no promise was made to the brother other than he would advise the court of his involvement as a witness. (Resp. Ex. 1, V 6 T 691-692). Judge Espinosa then passed the case. (Resp. Ex. 1, V 6 T

692-693) When the case was addressed again, the prosecutor inquired if the matter of the brother should be brought up with another judge.

The hearing on his motion to suppress resumed on October 15, 2001, and Leon's brother testified. The state court did not rule on the motion to suppress, but the case was transferred to Judge Fleischer for trial. Id.

When the case proceeded to jury trial the same day before Judge Barbara Fleischer, Leon did not complain to Judge Fleischer that he was denied a full and fair opportunity to litigate his motion to suppress. For the first time on direct appeal, Leon argued the trial judge did not complete the hearing on his motion to suppress. However, as the state pointed out in its answer, Leon had not raised any complaint to Judge Fleischer of an incomplete hearing on his suppression motion. The transcript of the continued proceedings on October 15th on the suppression hearing had not been included in the direct record.

 Leon's appellate counsel, in a motion for rehearing and motion to supplement, sought to include the transcript of the October 15, 2001, proceedings but was too late to do so.

Leon did not properly exhaust his ground in the Florida courts because he did not preserve for review his Fourth Amendment ground by timely objection at trial before raising the claim on appeal. Nor did he preserve an argument of an incomplete hearing on his suppression grounds. In Florida, to be preserved, the issue or legal argument must be raised and ruled on by the trial court. *Jones v. State*, 998 So.2d 573, 581-582 (Fla. 2008), (citing *Rhodes v. State,* 986 So.2d 501, 513 (Fla. 2008), *modified*, 986 So.2d 560 (Fla.2008) (citing § 924.051(1)(b), Fla. Stat. (2006)); and Philip J. Padovano, Florida Appellate Practice, § 8.1, at 148 (2007 ed.)("[T]he aggrieved party must obtain an adverse

ruling in the lower tribunal to preserve an issue for review.... Without a ruling or decision, there is nothing to review."). Florida's rules in such regard are regularly and consistently applied. *See Rose v. State*, 787 So.2d 786, 797 (Fla.2001) ("The failure of a party to get a timely ruling by a trial court constitutes a waiver of the matter for appellate purposes."); *Richardson v. State*, 437 So.2d 1091, 1094 (Fla.1983) (noting that appellant, having failed to pursue or obtain a ruling on his motion, did not preserve the issue for appeal).

On direct appeal, the state specifically asserted that Leon had ample opportunity to raise at trial the admission of the evidence obtained and propriety of the arrest, and he chose not to do so. And, with regard to his argument of a failure to complete the hearing, the state asserted failure to press the matter constituted a waiver. The ensuing silent affirmance rests on independent and adequate grounds barring federal review of Leon's ground. *See Harris v. Reed,* 489 U.S. 260 (1989).

In Leon's case, it cannot be assumed the Florida court ignored its preservation requirement. Indeed, the most reasonable assumption for the Florida appellate court's refusal to address Leon's suppression issue was because it was not preserved for review, working a waiver under state law. *See Sharpe v. McDonough,* 2006 WL 2038562 (N.D. Fla. 2006)(unpublished)(where procedural bar occurred at the trial level by a failure to object, and the only state court presented with the claim, the state appellate court, wrote no opinion, presumption was it relied upon procedural bar). "When a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we 'cannot assume that had the [state court] explained its reasoning, it would have reached the merits of [the] claim.'" *Zeigler v. Crosby*, 345 F.3d 1300,1310 (11th Cir. 2003), *cert. denied*, 543 U.S. 842 (2004)(quoting *Kight*,

which in turn cited *Tower*).

Neither the state nor the state appellate court need fear forfeiture of the bar by alternatively addressing the merits of his issue. "[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *See Alderman v. Zant*, 22 F.3d 1541, 1550 n. 10 (11th Cir. 1994)(collecting cases), *cert. denied*, 115 S.Ct. 673 (1994). The burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised. *See Bell v. Cone*, 543 U.S. 447 (2005) (citing *Baldwin*, 541 U.S. at 30-32). By not timely properly preserving his ground for review before raising the ground on appeal, Leon deprived the state courts of a "full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)).

As a result of his waiver, Leon was foreclosed from litigating his claim in a postconviction motion. Under Florida law, an issue that could have been preserved and then raised on direct appeal may not be reviewed in a rule 3.850 motion. *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, 498 U.S. 832 (1990). The Eleventh Circuit has long recognized this aspect of Florida law. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310

(11th Cir.) (claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922 (1983)).

In his rule 9.141 petition, Leon  claimed his appellate counsel rendered ineffective assistance by failing to inform the appellate court the direct appeal record was not complete. Leon lamented it was too late when his appellate counsel brought the matter of the transcript of the October 15, 2001 proceedings to the state appellate court's attention in a rehearing motion. Leon did not, however, plead facts meeting both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Jackson v. Herring*, 42 F.3d 1350, 1358 (11th Cir. 1995)(in order to constitute cause sufficient to overcome procedural default, counsel's performance must be constitutionally ineffective under *Strickland*), *reh'g, denied*, 51 F.3d 1052 (11th Cir. 1995).

Pursuant to applicable state law, an objection at trial when the subject evidence was adduced was required in order to preserve for review the ruling on Leon's motion to suppress. *See State v. Gaines*, 770 So.2d 1221, 1227, n. 7 (Fla. 2000)(noting that under prior case law, a defendant was required to renew a pretrial motion to suppress at the time the evidence is introduced in order to preserve the issue for appellate review).[1] Because there was no timely objection when the evidence was introduced, Leon's Fourth Amendment claims were not preserved for review. Where issue is not preserved for appellate review, an appellate counsel's forgoing such issue is not constitutionally deficient

---

[1] After Leon's judgment became final, section 90.104(1)(b), Florida Statutes, was amended, effective July 1, 2003, to provide that "[i]f the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

as doing so is based on the reasonable conclusion the appellate court will not hear the issue on its merits. *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992); *Francois v. Wainwright*, 741 F.2d 1275, 1285-86 (11th Cir.1984). Likewise, given that the ruling was not preserved for review, Leon cannot demonstrate it was reasonably probable that the state court, if informed of the pre-trial suppression ruling in briefing, would have granted him a new trial.

When Leon raised his defaulted ground in his rule 3.850 motion, the postconviction court applied the state's procedural rules foreclosing use of rule 3.850 for claims available for direct appeal. The ensuing affirmance rests on the bar.[2]  Any further cause allegation is now procedurally barred by the two-year limitation of rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of rule 3.850), *cert. denied*, 498 U.S. 834(1990), and the state's successive petition doctrine. *E.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Not showing cause, Leon cannot avoid his default, as the cause and prejudice components are in the conjunctive and thus both must be established to escape the preclusive effect of his procedural default. *Engle v. Isaac*, 456 U.S. 107 (1982).

Even assuming Leon could show valid cause, he cannot avoid his default. Leon does not meet the prejudice component. He does not allege and show there is at least a reasonable probability that the result of the proceeding would have been different had

---

[2]  In *Cone v. Bell*, 129 S.Ct. 1769, 1781 (2009), the Supreme Court made clear a claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration -- not when the claim has been presented more than once. In Leon's case, he is barred from raising the arguments he advanced on direct appeal as a result of his waiver by lack of preservation. To the extent Leon attempts to advance new arguments he raised in his rule 3.850 motion, Florida's companion rules governing issues which could be raised on direct appeal constitute independent and adequate grounds barring review.

counsel performed as Leon now contends that he should have. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). Leon does not overcome the presumption of correctness of the state court's findings by clear and convincing evidence. 28 U.S.C. §2254(e)(1). The state court was not obliged to accept Leon's factual underpinnings, particularly where the state adduced testimony showing the brother, by his actions, consented to the officer's entry onto the premises Leon shared with his brother and Ingrid Gonzalez, (Resp. Ex. 1, V 6 R 709, 724-25) and that the latter volunteered to furnish the shirt. (Resp. Ex. 1, V 6 R 728, 730)

Furthermore, Leon has not shown that he is actually innocent -- he has not met the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence not available at the time of trial. *Schlup v. Delo*, 513 U.S. 298 (1995).

Leon also complains the state court relied on hearsay testimony in denying his motion to suppress. (Doc. 1 at 6A-4). What is or is not hearsay evidence in a state court trial is governed by state law. *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997). An error in the application of state law by the trial court does not provide grounds for habeas relief. *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993)(citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

In Florida, hearsay can be used to establish probable cause to arrest. *Hayward v. State*, 2009 WL 2612524 (Fla. 2009). Subject matter jurisdiction does not lie to review whether such was properly admitted in Leon's suppression proceedings under Florida law. A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Issues which present nothing more than issues of pure state law are wholly immune from

federal habeas review. *See Jamerson v. Sec. for Dep't of Corrs.*, 410 F.3d 682, 688 (11th Cir. 2005) ("Federal habeas relief is unavailable for errors of state law.") (quotation omitted).

Moreover, this aspect of ground one is also procedurally barred for the reason Leon did not preserve and then raise the constitutional dimension of his evidentiary issue on direct appeal.[3] To exhaust state remedies fully the petitioner must make the state court aware the claims asserted present federal constitutional issues. *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citing *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). Leon does not make the required showing to excuse his default.

Ground one does not warrant habeas relief.

GROUND TWO

THE SENTENCE IMPOSED WAS VINDICTIVE BECAUSE THE TRIAL COURT BECAME INVOLVED IN THE PLEA NEGOTIATIONS AND SENTENCED THE PETITIONER TO A GROSSLY DISPROPORTIONATE SENTENCE FOR THE CRIME, MANIFEST INJUSTICE/ACTUAL INNOCENCE.

According to Leon, the state court judge became involved in plea negotiations and sentenced him to a grossly disproportionate sentence for his crime. This ground is procedurally barred because Leon did not raise the constitutional dimension of his ground at sentencing and then on direct appeal. Under Florida law, the argument that a defendant's sentence was vindictive must be raised in the trial court and cannot be raised for the first time on direct appeal. *Creed v. Department of Corrections*, 330 Fed.Appx. 771,

---

[3] The Eleventh Circuit has observed that while error in the application of hearsay rules may in some instances present a significant risk of violating the confrontation clause of the Sixth Amendment, the Supreme Court has refused to equate the two. *De Benedictis v. Wainwright*, 674 F.2d 841, 843 (11th Cir. 1982)(citing *California v. Green*, 399 U.S. 149, 155 (1970); *Dutton v. Evans*, 400 U.S. 74, 86 (opinion of Stewart, J.; Harlan, J., concurring).

772 (11th Cir. 2009)(unpublished)(citing *Allende v. State*, 882 So.2d 472, 473 (Fla. 5th DCA 2004) ("While conceding that the issue was not preserved in the trial court, Allende contends that a vindictive sentence constitutes fundamental error that can be raised for the first time on [direct] appeal. We disagree.").

Leon did not fairly present the constitutional dimension of his ground to the state trial court at sentencing. As a result, any such federal claim was not preserved for review. Therefore, he was foreclosed from raising a constitutional claim regarding his sentence for the first time on direct appeal. Moreover, although Leon argued on direct appeal that his sentence was vindictive, he advanced his issue in state law terms, which did not suffice to meet the fair presentment of a federal claim requirement. As the Supreme Court held in *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam), "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." 513 U.S. at 365-66.

The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). Exhaustion is not satisfied "merely" if the petitioner presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004)(citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal

principles to the facts bearing upon his constitutional claim.'" *Id.*(quoting *Picard*, 404 U.S. at 277).

A reasonable reader should be able to understand the factual and legal bases for the claim. McNair v. Campbell, 416 F. 3d 1291, 1302-03 (11th Cir. 2005). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of the law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim "federal." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

At his sentencing, Leon did not give the state trial court at sentencing an opportunity to address a federal constitutional claim regarding the length of his sentence. Moreover, on direct appeal, he did not raise his ground in federal constitutional terms or cite a federal or state case resting on federal constitutional grounds. Leon's reliance on *McDonald v. State*, 751 So.2d 56 (Fla. App. Dist. 1999), did not fairly present a federal claim to the state appellate court. The *McDonald* court observed that a defendant's fear of retribution in sentencing cannot be permitted to chill the exercise of the Fifth Amendment privilege against self-incrimination, or the Sixth Amendment right to have guilt or innocence determined by a jury. *McDonald* went on to address *state law* regarding a judge's participation in plea negotiations. Furthermore, Leon did not argue the state court, had through any action, caused him to fear retribution if he exercised either his right to remain silent or his right to a jury trial. As a result, Leon defaulted his ground because he was precluded from raising such in a rule 3.850 motion.[4]

Moreover, Leon advances a theory of vindictiveness he did not preserve and then

---

[4] *See e.g., Brown v. McNeil*, 2009 WL 2970419 (S.D. Fla. Sept. 15, 2009)(unpublished)(adopting report finding claim of judicial vindictiveness in sentencing defaulted).

raise on direct appeal. Leon's arguments were the judge became involved in negotiations. Leon did not argue at his sentencing and on direct appeal the sentence was vindictive because the sentence was grossly disproportionate to his crimes, the theory of vindictiveness he advances in ground two of the federal petition. When he endeavored to press his vindictiveness theory in his rule 3.850 motion, the postconviction court applied Florida's rules governing issues which could be raised on direct appeal in denying his claim.  The ensuing affirmance rests on independent and adequate state grounds barring review of his argument of a disproportionate sentence. He does not make the required showing to excuse his defaults.

Even if the claim were not defaulted, Leon does not show the state decision resulted in an unreasonable application of federal law as clearly established by the Supreme Court or an unreasonable determination of the facts in light of the evidence. The imposition of a longer sentence than a defendant would have received had he pleaded guilty does not automatically amount to punishment for the defendant's exercising his right to stand trial. *Bordenkircher v. Hayes*, 434 U.S. 357  (1978); *Frank v. Blackburn*, 646 F.2d 873, 882-83 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).  A trial judge may reasonably increase a defendant's sentence after trial because the trial gives the judge the benefit of hearing testimony, becoming aware of the facts of the case, and understanding "the flavor of the event and the impact upon any victims." *Frank,* 646 F.2d at 885.

Neither at sentencing nor on direct appeal, nor in his rule 3.850 motion did Leon set forth a basis to conclude there was a reasonable likelihood of actual judicial vindictiveness on the part of the sentencing judge. Leon claims the state court urged him to accept the

offer of the state. However, even the comments Leon cites reflect that the state court was conveying to Leon that the court was not telling him he should take the offer.

Furthermore, Leon's sentence is amply supported by the facts developed at his jury trial, and there is no evidence in the record to indicate the state judge intentionally set out to punish Leon for not accepting the plea negotiations. *See Frank*, 646 F.2d at 885 ("We have no reason to attribute [the] increased sentence to anything other than the trial judge's more accurate appraisal of the circumstances after hearing the full disclosure of the facts at trial.").

Leon states the trial court made improper comments at sentencing. However, none of the remarks fell outside the ambit of fair comment on the evidence adduced at trial. The state record supports a logical and nonvindictive basis for his sentence, namely: the brazen nature of his separate lewd exhibition acts in the presence of different children. *See Texas v. McCullough*, 475 U.S. 134, 140 (1986)(where second sentencer provided an on-the-record, wholly logical, nonvindictive reason for the sentence, Court read *Pearce*[5] to require no more, particularly since trial judges must be accorded broad discretion in sentencing).

Review of the remarks of the trial court, taken in context and entirety, bears this out. Leon urges that the trial court's remark "he lied through his teeth under oath" showed vindictiveness. However, the trial court was present during all the testimony, and the court's remarks amounted to no more than fair comment on the evidence, in light of the testimony of the victims which was obviously credited by the jury. *Cf., Bostick v. Secretary, Dept.* of

---

[5] *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969).

*Corrections*, 2008 WL 2047932 (M.D. Fla. 2008)(prosecutor's statement, "He sat in front of Your Honor and lied ..." was a fair comment on evidence in probation revocation proceeding).

Leon states he was punished for conduct never proven. However, the sentencing court had before it a pre-sentence investigation report revealing Leon had a prior offense of exposure of sexual organs. (Resp. Ex. 1, V 5 T 600) Contrary to Leon's theory that he was punished for uncharged conduct, the state court was properly factored Leon's criminal record in the imposition of Leon's sentences.[6]  Based on the state record, it is objectively reasonable to conclude Leon was not being punished for trying his case or taking the stand on his own behalf.

Leon claims his sentence is disproportionate to his offenses. Leon does not, however, raise an Eighth Amendment claim in ground two of the instant petition. Even if he is so attempting, that claim is procedurally barred because Leon did not timely raise an Eighth Amendment claim at sentencing and then on direct appeal.

Even if considered on the merits, the claim does not warrant habeas corpus relief. The Supreme Court has held that the Eighth Amendment includes only a "narrow proportionality principle," one that does not require strict proportionality between crime and

---

[6] At the time of sentencing, he had a pending charge in another county. On October 4, 2002, Leon pled nolo contendere to battery on a child by expelling bodily fluids, a third degree felony, reduced from an original charge of lewd and lascivious act on a child under sixteen, arising out of the Seventeenth Judicial Circuit, Broward County. He was sentenced to time served on October 17, 2002. Leon unsuccessfully challenged his plea-based judgment in said case in a federal habeas corpus petition in the Southern District of Florida in case no. 04-60960-CIV-ZLOCH. Before Leon was sentenced on the lewd exhibitions counts in the Hillsborough County case, the prosecutor, observing the pending charge could not be considered in sentencing, properly remarked that the fact he had committed the instant crimes while on bond evinced Leon's lack of regard for the law. (Resp. Ex. 1, V 5 T 596) At any rate, there is nothing in the state court's remarks which could indicate the sentences on the lewd exhibition offenses were based on Leon's pending charge in the other county.

sentence but instead forbids "only extreme sentences that are grossly disproportionate to the crime." *See Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring). The principle "does not require strict proportionality between crime and sentence," but rather "it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1001 (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Accordingly, successful challenges based on proportionality are "exceedingly rare," and deference is due legislative judgments on such matters. *Solem*, 463 U.S. at 289-90.

The proportionality principle does not compare sentences among co-defendants but instead considers only whether a sentence is grossly disproportionate to the crime. See *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003), a habeas case in which the Supreme Court addressed whether a noncapital sentence should be considered cruel and unusual as grossly disproportionate to the crime. In *McCullough v. Singletary*, 967 F.2d 530 (11th Cir.1992), *cert. denied*, 507 U.S. 975 (1993), the Eleventh Circuit found that because the convictions for sexual assault and burglary in the first degree involved a crime of violence against a person, the petitioner's sentence of life without possibility of parole did "not rise to the level required to shock the judicial conscience nor does it constitute cruel and unusual punishment." *Id.* at 536. *See also Adaway v. State*, 902 So.2d 746, 749 (Fla. 2005) (life sentence without possibility of parole was not grossly disproportionate to the offense of sexual battery of a minor).

The state's evidence at trial established that Leon sought in particular as his "prey" two vulnerable children to witness his lewd acts, and it is objectively reasonable to conclude that his sentences were not disproportionate to the severity of his crimes. The state decision resulted in a reasonable application of established Supreme Court precedent and

a reasonable determination of the facts in light of the evidence.

Ground two does not warrant habeas corpus relief.

GROUND THREE

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO FILE A MOTION TO SUPPRESS THE PHOTO-PACK IDENTIFICATION OF THE PETITIONER ON THE GROUNDS THAT IT WAS UNNECESSARILY SUGGESTIVE.

Leon contends his trial counsel rendered ineffective assistance by not filing a motion to suppress the out of court identification procedures in his case on grounds of suggestiveness. This ground is exhausted to the extent alleged in his rule 3.850 motion as a claim of proposed omission of counsel, at the state evidentiary hearing and on collateral appeal.[7]

An alleged error in the original judgment predicated on ineffective assistance of counsel challenges the conviction's validity. *United States v. Denedo*, 129 S. Ct. 2213 (2009)(citing *Knowles v. Mirzayance,* 129 S. Ct. 1411 (2009). The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)(quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). This is not one of those cases.

The defendant has the burden of showing (1) "counsel's representation fell below

---

[7] His underlying substantive issue is procedurally barred because Leon did not preserve a constitutional claim regarding admission of evidence concerning the pretrial identification procedure by contemporaneous objection at trial and then raise the claim on direct appeal. *See e.g., Johnson v. Singletary*, 647 So.2d 106, 109-110 (Fla. 1994)(denying postconviction movant's claim of an unduly suggestive and unreliable identification procedure as procedurally barred); *Green v. State*, 711 So.2d 69, 70 (Fla. 4th DCA 1998) (although defendant moved to suppress identification prior to trial, he did not renew his objection at trial; his failure to object at trial to admission of contested evidence waived his right to claim on appeal evidence was erroneously admitted).

an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Without proof of both deficient performance and prejudice to the defense, it cannot be said that the conviction resulted from a breakdown in the adversary process that rendered the result of the proceedings unreliable. *Strickland,* 466 U.S. at 687.

The petitioner has the burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. *See Osborne v. Terry*, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). In order to establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." *Chandler*, 218 F.3d at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. *See Chandler* at 1317.[8]

The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. *See Strickland*, 466 U.S. at 689 For a petitioner to show deficient performance, he "must establish that no competent

---

[8] The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. *Chandler* at 1313. Instead the test is ... whether what they did was within the wide range of reasonable professional assistance. *Id.* at n.12(citing *Waters*, 46 F.3d at 1518 (en banc) (citations omitted).

counsel would have taken the action that his counsel did take."[9] *Chandler* at 1316.

Second, the petitioner must show that deficient performance prejudiced the defense. *Strickland*, at 693-96. Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*  If a defendant fails to make a proper showing under one of the prongs, the Court need not consider the other prong.  466 U.S. at 697.

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Knowles*, 129 S. Ct. at 1420 (citing *Schriro v. Landrigan*, 440 U.S. 465, 473 (2007)). Because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *Knowles*, 129 S.Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations"). Under the "doubly deferential" judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, *Knowles*, 129 S. Ct. at 1420, Leon's claims of ineffective assistance of counsel fail.

---

[9] To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." *Strickland,* 104 S. Ct. at 2065. No lawyer can be expected to have considered all of the ways. *Chandler* at 1316.

Leon was afforded an opportunity to develop his ground, and he failed to establish

his underpinnings. In denying Leon's third rule 3.850 claim after an evidentiary hearing, the

postconviction court held, in relevant part, as follows:

> In ground 3, Defendant claims that counsel was ineffective for failing to file a motion to suppress the photopack identification of Defendant on grounds that it was unnecessarily suggestive. Specifically, Defendant alleges that counsel failed to pursue the suppression of the eye-witness identification and suggestive photo line-up. Defendant argues that neither witness got a good look at the perpetrator's face and that both girls' descriptions varied each time they were relayed. Defendant further argues that both girls were allowed to hear each other's descriptions, which tainted the reliability of the identification.

> During trial, witness Krista Johnson ("Witness Johnson") testified that Detective Sutkoff showed her the photopack, told her to take her time, and did not hint or suggest to her whom to choose. (See Trial Transcript, pages 220-227, attached). Witness Johnson also testified that she had no doubt that the photograph she selected was of the man she observed on April 18, 2001, and she identified Defendant in court as the perpetrator. (See Trial Transcript, pages 221, 228, attached). Defense counsel cross-examined Witness Johnson as to her deposition testimony that "none of them really looked like the guy," and that Defendant's picture in the photopack gave her an "eerie feeling." Defense counsel also cross-examined Witness Johnson as to her poor memory and eyesight, and that while she could not recall whether the perpetrator had facial hair, she told the public defender's investigator that the perpetrator did have facial hair. (See Trial Transcript, pages 229-244, attached).

> Witness Arian Daniels ("Witness Daniels") also testified that Detective Sutkoff did not hint or suggest to her whom to select from the photopack, and that at the time she made her selection, she did not know which photograph Witness Johnson had selected. (See Trial Transcript, pages 261-266, attached). Witness Daniels identified Defendant in court as the perpetrator and testified that there was no doubt Defendant was the man she observed on April 18, 2001. (See Trial Transcript, pages 265-266, attached). Witness Daniels also testified that the suspect she saw had facial hair, but was cross-examined by counsel as to her description to the public defender's investigator that the perpetrator had a beard with long sideburns. (See Trial Transcript, pages 255-256, 270-271, attached).

> Detective Sutkoff testified that the six photographs displayed in the photopack featured white males with dark hair and facial hair, that he showed

the victims the photopack independent of each other, and that both victims immediately selected Defendant from the photopack. (See Trial Transcript, pages 417-423, attached).

During the evidentiary hearing, the defense called a board certified criminal trial attorney to render his opinion of counsel's performance:

> A. My understanding is that Mr. Green (phonetic) filed a motion to suppress, basically, a fourth amendment motion to suppress evidence based upon an illegal search. However, there was no motion filed as to the photo pack identification. A review of the photo pack itself shows six pictures. Five of which are clearly with people with dark complection [sic] one of which is of light complection [sic] and, of course, that's the defendant in this case. Also, in reviewing the trial transcript it appears as if Mr. Green was alluding to -- when the photo pack was shown to one of the alleged victims in this case, the police officer, allegedly, when the girl started to point toward the top row, stopped her and said, 'Just a minute now you need to think about this you need to think about this' and she stopped and then a subsequent identification was made on the far-right hand side of the lower group of photographs. I think that he should've filed a motion to suppress on the basis of both of those as well as other issues related to the photo pack identification.

> . . . . . . .

> A. . . . the identification, I understand by reading the trial transcript, was all over the board. There were several identifications made about people with facial hair, without facial hair. Whether the person had a jaw line beard, did not have a jaw line beard, had no facial hair what-so-ever. It was so uncertain that the issue of the identification in the photo pack and the way that it was done was critical enough it should've been tested and brought before a Judge, in my opinion.

> Q. In your opinion, would that constitute an error that it would've materially affected the outcome of this case?

> A. Yes.

(See September 12, 2006 Transcript, pages 11-12, attached).

During the evidentiary hearing, defense counsel was not called to

testify as a witness. As such, Defendant relies on *Green v. State*, 857 So. 2d 304 (Fla. 2d DCA 2003) and argues that where the State fails to present any evidence to refute Defendant's allegations, and evidence is presented, a court is compelled to the conclusion that the defendant has carried his burden under *Strickland.* The suppression of an out-of-court identification is governed by the following two-part test: "(1) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Rimmer v. State*, 825 So. 2d 304, 316 (Fla. 2002). "[A] suggestive confrontation procedure, by itself, is not enough to require exclusion of the out-of-court identification; the confrontation evidence will be admissible if, despite its suggestive aspects, the out-of-court identification possesses certain features of reliability." *Grant v. State*, 390 So.2d 341, 343 (Fla. 1980)(citing *Manson v. Brathwaite*, 432 U.S. 98, 110, 97 S. Ct. 2243, 2250, 53 L.Ed.2d 140 (1977)).

Although defense counsel was not called to testify during the evidentiary hearing, the Court finds that based upon its review of Defendant's Motion, the record, and the hearing testimony, Defendant has failed to meet his burden under *Strickland.* The Court finds that the identification of Defendant from the photopack was reliable. Based upon the testimony presented at trial, there is little evidence to suggest that the police directed either victim to any particular photograph, or that Defendant's photograph was unnecessarily suggestive. Contrary to the testimony from the defense's expert witness, there is nothing in the record to indicate that when either victim began to select a photograph, the detective stopped and told them to "think about this," prompting them to make a different selection. This appears nowhere in the trial transcript. Rather, Witness Johnson answered as follows when questioned by counsel:

> Q. When you were looking at that photopack that you were going to towards the top, towards the top pictures because those are the ones that looked familiar, and then they told you to take your time and that's when you went to the bottom corner?

> A. Well, in the pictures they all looked the same, but I started off at the top, but before I even looked at the - - any of them they said "take your time."

> Q. Okay. And the reason that you picked this person out of the photopack is not because it really looked like the guy but the picture gave you, quote, "an eerie feeling." Isn't that correct?

        A. Because there was no doubt in my mind that that wasn't him in there.

(See Trial Transcript, page 243, attached).

        Moreover, both victims unequivocally identified Defendant when shown the photopack, and both victims made their identifications independent of each other. At the time of the alleged incident, the two victims were close enough to observe the perpetrator, as evidenced by their testimony that the perpetrator exposed his genitals, that they observed the appearance of the vehicle and could read the license plate number, and that they heard the words spoken to them by the perpetrator. Finally, the Court has examined the photopack introduced at trial. While the complexion of Defendant is slightly lighter than the other photographs, the hair color, facial hair, and hair style of all men depicted in the photopack are extremely similar in appearance.

        Taking all of this into consideration, along with the fact that there was other evidence against Defendant presented to the jury, the Court finds that Defendant is unable to demonstrate prejudice, pursuant to *Strickland*. Whereas one could argue that there might have been a good faith basis on which to seek a motion to suppress the photopack identification, there is nothing to establish that having done so would have produced a different outcome. As such, Defendant is not entitled to relief and ground 3 is denied.

(Resp. Ex. 19 at 3-7)

Leon does not overcome the presumption of correctness of the state court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor did he in his rule 3.850 proceeding overcome the strong presumption that counsel's decisions regarding the identification evidence were made in the exercise of professional judgment. *Strickland*, 466 U.S. at 690.

Leon did not call his trial counsel at the evidentiary hearing. That Leon chose instead to put on a retained lawyer who was willing to offer opinion testimony on counsel's effectiveness did not meet his burden of showing his trial counsel's performance was deficient. As the Eleventh Circuit has observed, permitting expert testimony to establish

ineffective assistance is inconsistent with the Court's recognition that the issue involved is a mixed question of law and fact that the court decides. *Freund v. Butterworth*, 165 F.3d 839, 863 n.34 (11th Cir. 1999)(citing *Provenzano v. Singletary*, 148 F.3d 1327, 1331-32 (11th Cir. 1998)("There is another more fundamental reason why Provenzano is not entitled to an evidentiary hearing on the reasonableness of his counsel's decision to forego a change of venue, regardless of any affidavit he may have proffered...... the reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof. Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by state courts, by the district court, and by this Court, each in its own turn."). Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation with regard to counsel's performance). *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999).

With respect to Leon's underlying issue, the Supreme Court in *Neil v. Biggers*, 409 U.S. 188 (1972), held that the central issue to be decided regarding witness identification is whether, under the totality of circumstances, the identification was reliable even though the confrontation procedure was suggestive. Factors to consider when determining the likelihood of misidentification include: opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id.* at

199-200.

Leon fails to show that not one reasonably competent attorney could conclude, as a threshold matter, that the trial court was not incorrect in determining the photo display procedures used in his case were not suggestive. The detective's trial testimony reflects the photographs depicted white males having similarities such as dark hair, with each having facial hair. (Resp. Ex. 1, V 4, T 417-418).  Moreover, in presenting the photographic display to each victim separately, the detective was careful not to suggest the perpetrator was depicted. (Resp. Ex. 1, V 4 T 418-19, 421-422).

Even if counsel assumed the suggestiveness hurdle could be overcome, nonetheless, it is objectively reasonable to conclude under the totality of the circumstances, the procedures employed in Leon's case did not create a substantial risk of irreparable misidentification. The victims unequivocally identified Leon (Resp. Ex. 1, V 3 T 421-423), and the record supports the objectively reasonable conclusion the procedures possessed the indicia of reliability outlined in *Biggers*. At least one reasonably competent attorney could conclude that with regard to each incident, the victim had sufficient opportunity to view Leon at the time of the crimes and her identification was reliable.

Ground three can be disposed of on *Strickland*'s prejudice prong without addressing the deficiency prong. The state record bears out the objectively reasonable determination that each victim had ample opportunity to view Leon.  In light of each victims' sufficient opportunity to view him at the time of crimes, it is objectively reasonable to conclude the identification evidence was reliable. Accordingly, Leon fails to show there was any reasonable probability of a different outcome had counsel filed the proposed motion to suppress.

-33-

Ground three does not warrant habeas relief.

## GROUND FOUR

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO MOTION THE COURT TO SEVER THE TWO CHARGES SINCE THEY WERE COMMITTED AT TWO DIFFERENT TIMES.

Ground four is exhausted to the extent Leon raised the claim in his rule 3.850 motion and on collateral appeal. Leon was afforded an opportunity to develop his ground and he declined to do so at the state evidentiary hearing. In denying his fourth rule 3.850 claim after conducting the probe, the postconviction court held, in relevant part, as follows:

> The Court initially granted an evidentiary hearing on grounds 3, 4, 6, 8, 9, 10, 11, 14, and 18 of Defendant's Motion. However, during the evidentiary hearing, Defendant informed the Court that, although he was not withdrawing any grounds raised, he would be presenting testimony on only grounds 3, 8, and 11. Further, Defendant argued at the evidentiary hearing that, *Green v. State*, 857 So. 2d 304 (Fla. 2d DCA 2003), he had met his burden, and therefore, even those grounds not argued by Defendant should be granted, as the State failed to present evidence to refute Defendant's allegations. In *Green*, the appellate court noted that "[o]n remand for an evidentiary hearing, Green had the burden of proving his claim of ineffective assistance of counsel." *Green*, 857 So. 2d at 305. However, the appellate court held that where the defendant testified in support of his allegations, and the State failed to present evidence in rebuttal, the defendant met his burden. *Id.*

> The Court finds the present case to be distinguishable, as Defendant, unlike Green, failed to present any evidence at the evidentiary hearing on grounds 4, 6, 9, 10, 14, and 18. Therefore, the Court concludes that, with respect to these grounds, Defendant has failed to meet his burden under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As such, grounds 4, 6, 9, 10, 14, and 18 of Defendant's Motion are denied. . . . .

(Resp. Ex. 19 at 1-2)

Leon's underlying issue was one of state law, and the state courts did not conclude the offenses were improperly tried together, and thus, Leon failed to demonstrate not one

reasonably competent attorney could conclude the offenses were properly consolidated for trial under Florida law. Moreover, Leon failed to show not one such attorney could forego the proposed motion on the basis the state could adduce the other incident as similar fact evidence to establish his common scheme, motive, and his identity as the perpetrator at each respective trial. *See e.g., Fotopoulos v. State*, 608 So.2d 784, 790 (Fla. 1992) (even if there had been separate trials, evidence of each offense would have been admissible at the trial of the other to show common scheme and motive, as well as the entire context out of which the criminal action occurred).

The ground fails scrutiny under *Strickland*'s prejudice prong. Given that under state law, testimony as to one incident was admissible as other act evidence in the trial on the other incident, Leon fails to show that had his counsel filed the proposed motion to sever, there was any reasonable probability of a different outcome. Furthermore, the evidence adduced at Leon's trial was compelling with regard to each offense, and any claimed error in joinder of the offenses had no substantial and injurious effect or influence in determining the jury's verdict with regard to these offenses. *See Brecht v. Abramson*, 507 U.S. 619, 637(1993). Thus, the state court decision resulted in an reasonable application of *Strickland* and a reasonable determination of the facts in light of the evidence.

Ground four does not warrant habeas relief.

## GROUND FIVE

INEFFECTIVE   ASSISTANCE   OF   COUNSEL,   MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO OBJECT TO ANDREW LEON BEING CALLED AS A STATE WITNESS WITHOUT PRIOR NOTICE.   ANDREW LEON WAS PLACED ON THE STATE'S WITNESS LIST ON THE SECOND DAY OF TRIAL.

Leon faults his counsel for not objecting to his brother's testifying as a state witness

on grounds of lack of prior notice. He claims his counsel should have asked for an inquiry

to determine whether a discovery violation had occurred. Ground five is procedurally barred

because Leon did not provide specific argument on this claim in his collateral appeal. In

summarily denying ground five of his rule 3.850 motion, the postconviction court found, in

relevant part, as follows:

> In ground 5, Defendant alleges counsel failed to object to Andrew Leon being called as a State's witness without prior notice. Defendant further alleges that Andrew Leon was not placed on the State's witness list until the second day of trial.

> After reviewing the court file, it appears that Defendant is mistaken. On August 30, 2001, the State filed "Additional List of Witnesses," which contained two witnesses: Adail Izquierdo and Andrew Leon. Both witnesses resided at 12202 22nd Street, Building 7, #711. (See State's Additional List of Witnesses, attached). On October 3, 2001, the Defense filed "Defendant's Additional/Amended List of Witnesses," naming Andrew W. Leon residing at 21021 Voyager Blvd., Apt. L5, Land O'Lakes, Florida 34639. (See Defendant's Additional/Amended List of Witnesses, attached). On October 16, 2001, the "State's Witness List" was filed for trial, and it included Andrew Leon. (See State's Witness List, attached).

> Not only did Defendant receive at least six weeks notice prior to trial that the State listed Andrew Leon as a witness, but Defendant also noticed the State on October 3, 2001, that Defendant might call Andrew Leon as a witness. Accordingly, Defendant has failed to show how counsel performed deficiently. Since he has not met the *Strickland test*, ground 5 is denied.

(Resp. Ex. 18)

On appeal from the rule 3.850 denial, Leon waived his ground by not providing

specific argument on his claim, thereby waiving and defaulting the claim under state law.

In Florida, a petitioner is considered to have abandoned claims which appellate counsel did

not brief with specific argument thereon. *See Simmons v. State*, 934 So.2d 1100, 1111 n.12

(Fla. 2006)(finding petitioner's claim that the prosecutor made improper remarks concerning

the DNA evidence on petitioner's car seat was waived because the issue was not properly

briefed)(citing *Coolen v. State*, 696 So.2d 738, 742 n. 2 (Fla. 1997)(stating failure to fully brief and argue points on appeal "constitutes a waiver of these claims").    In *Duest v. Dugger*, 555 So.2d 849, 852 (Fla. 1990), the Florida Supreme Court emphasized that merely making reference to arguments in the lower court without further elucidation does not suffice to preserve issues, and such claims are deemed waived. Leon's appeal followed an evidentiary hearing, and he was therefore obliged to brief his issues. His collateral counsel chose not to brief this ground, thereby waiving the claim.  *See also, e.g., State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1997)(in absence of any argument addressed to propriety of dismissal of charge of driving while license suspended or revoked, court concluded the state abandoned such a claim), *rev. denied*, 729 So.2d 393 (Fla. 1999).

Leon does not allege and show any factor external to the defense prevented the presentation of his claim on collateral appeal. Not showing valid cause, he cannot avoid his default, as the cause and prejudice components are in the conjunctive and thus both must be established to escape the preclusive effect of his procedural default. Nor does he meet the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence.

Leon does not meet his burden under the AEDPA standards. Whether the witness was disclosed in discovery is a factual determination, and this Court must defer to factual findings of the state court, as Leon does not overcome the presumption of correctness of the state court's findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor does he show not one reasonably competent attorney could have foregone the state law argument he proposed. Leon's underlying claim that the prosecutor had committed a discovery violation was based on state law. In *Richardson v. State,* 246 So.2d 771

-37-

(Fla.1971) the Florida Supreme Court held that if the state fails to comply with a discovery rule, the court must conduct an inquiry into the circumstances of the violation. In Leon's case, the postconviction court, and in turn, the state appellate court by its silent affirmance, have answered the question of what would have happened had his counsel objected to the brother's testimony and sought a *Richardson* hearing. *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005)(Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).[10]

This claim can be denied on *Strickland*'s prejudice prong without addressing the deficiency prong. A *Richardson* hearing is only necessary if there is discovery violation. *See Richardson State*, 246 So. 2d 771, 775 (1971). In this case, the postconviction court found that the witness had been disclosed in discovery by the prosecutor. Therefore, there was no violation by the prosecutor and no basis for trial counsel to request a *Richardson* hearing.

Moreover, Florida no longer abides by a per se rule of reversal as to the failure to hold a *Richardson* hearing. *See State v. Schopp*, 653 So. 2d 1016 (Fla. 1995) (the failure of a trial court to conduct a *Richardson* hearing is subject to a harmless error analysis).

---

[10]   Although whether trial counsel was constitutionally ineffective is a question of federal law, when the answer to the question turns on whether counsel should have raised issues of state law, § 2254(d) requires the federal court defer to the state court's decision regarding its own laws. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds). Federal courts must abide by the state courts' rulings on matters of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (citations and footnote omitted). It is a fundamental principle state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *See Herring v. Secretary, Dept. of Corrections,* 397 F.3d 1338, 1354-55 (11th Cir. 2005)(citing *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)(internal citations omitted).

Leon does not demonstrate the state court would have been precluded from concluding there was no reasonable possibility his trial preparation or strategy would have been materially different had the alleged violation not occurred. Leon states the brother had a warrant outstanding and claims he would have called his mother to testify. However, Leon in his rule 3.850 motion did not allege the prosecutor ever told him the brother who had been listed would not testify, and that the defense gambled the brother would not appear.

Moreover, with respect to each offense, the state's case against Leon did not turn on the brother's testimony. In view of the victims' compelling testimony, it is objectively reasonable to conclude the state court's foregoing a *Richardson* inquiry with regard to the brother's testimony had no "substantial and injurious effect or influence in determining the jury's verdict." *Brecht, supra*. Accordingly, Leon fails to demonstrate that had his counsel objected to the brother's testimony on the grounds proposed, there was any reasonable probability of a different outcome.

Ground five does not warrant habeas relief.

GROUND SIX

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO DEPOSE AND CALL INGRID GONZALEZ, AS A WITNESS AT PETITIONER'S HEARING AND PETITIONER'S TRIAL.

Leon faults his trial counsel for not deposing and calling Ingrid Gonzalez as a witness at the suppression hearing and his trial. This ground is exhausted to the extent Leon raised it in his rule 3.850 motion and raised it on collateral appeal as a claim of proposed omission of counsel. Afforded the opportunity, he failed to establish support for his claim. Leon declined to present testimony on his ground at the rule 3.850 hearing, and

-39-

he failed to demonstrate any deficiency in counsel's foregoing the proposed testimony.

The ground can be disposed of on the prejudice prong of *Strickland* without addressing the deficiency prong. He did not call Gonzalez to testify at the evidentiary hearing to show she would have been available to testify at the suppression hearing and would have given testimony credibly undercutting that of the officers who came to the residence.

Leon's ground is based on speculation, which does not satisfy his sole burden of establishing actual prejudice. *See Spencer v. State*, 842 So. 2d 52 (Fla. 2003)(rejecting ineffectiveness claim where collateral counsel failed to call the allegedly impeaching witness during the evidentiary hearing and noting that reversible error cannot be predicated on "conjecture."). Afforded the opportunity, Leon failed to demonstrate that had his counsel deposed and called Gonzalez as proposed, there was any reasonable probability of a different outcome in his case. Accordingly, the state decision resulted in a reasonable application of *Strickland* under either prong.

GROUND SEVEN

Leon abandoned ground seven in his reply to the response.  (See Doc. 29, p. 17)

GROUND EIGHT

INEFFECTIVE   ASSISTANCE   OF   COUNSEL,   MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL OPENED THE DOOR TO HEARSAY TESTIMONY ALLEGEDLY MADE BY INGRID GONZALEZ THAT PREJUDICED THE PETITIONER.
Leon faults his counsel for opening the door to hearsay statements of Ingrid Gonzalez. This ground is exhausted to the extent Leon raised it in his rule 3.850 motion as a claim of ineffective assistance of counsel, at the state evidentiary hearing, and on collateral appeal. After affording Leon an evidentiary hearing on his ground, the

-40-

postconviction court held, in relevant part, as follows:

In ground 8, Defendant claims that counsel was ineffective for opening the door to allow the admission of hearsay testimony from Ingrid Gonzalez (Defendant's girlfriend), which prejudiced Defendant. During trial, counsel asked the following question of Officer Buttiglire:

Q. Were you able to determine from your conversation with anyone at that house whether or not Mr. Leon was in the car that day by himself?

(See Trial Transcript, page 344, attached). From this, the State was able to question the officer as to whether he learned from Ingrid Gonzalez that Defendant was alone in the car at the time of the alleged incident, and the officer testified that he did. (See Trial Transcript, pages 344-350, attached). The State was also able to question Corporal Wilson as to Ingrid Gonzalez's statement of Defendant's whereabouts at the time of the incident, and was able to call attention to this statement again during closing arguments. (See Trial Transcript, pages 353-357, 523-524, attached). Ingrid Gonzalez did not testify at trial, and Defendant argues that the trial court held, and the appellate court affirmed that counsel opened the door to allow this testimony, which would otherwise have been inadmissible.

During the evidentiary hearing, the defense called a board certified criminal trial attorney who testified that this was "the most egregious fault" of counsel, and stated as follows:

Q. Okay. And so in your opinion the admission of that hearsay statement alone rises to the level of ineffectiveness?

A. Of course the Judge certainly understands *Strickland* and that is there has to be deficiency on part of the lawyer and there has to be prejudice resulting from the deficiency. I found that it was deficient to allow that in and it was a reckless comment that allowed the introduction of that flood of hearsay that was capitalized on by the prosecutor and it resulted in prejudice because the jury then was able to use hearsay to determine a critical issue in this case and that was whether or not he was in the car, yes.

(See September 12, 2006 Transcript, pages 13-14, attached).

Allegations that counsel was ineffective due to opening the door to allow the admission of incriminating testimony may be raised in a Rule 3.850 post conviction relief motion. *Barychko v. State*, 837 So. 2d 491, 491-492

-41-

(Fla. 4th DCA 2003). Through "opening the door," testimony which might otherwise be inadmissible may be introduced during trial. *Rodriguez v. State*, 753 So. 2d 29, 42 (Fla. 2000).

Upon review of the record, the Court finds that Defendant is unable to meet his burden under *Strickland*. Even if counsel was deficient for opening the door to the statement from Ingrid Gonzalez, Defendant has failed to establish that he suffered prejudice. Regardless of this particular testimony, the jury was presented with sufficient evidence to support its guilty verdict. For example, both victims described the alleged incident and perpetrator, independently identified Defendant from the photopack and during trial, and provided police with a description of the vehicle and license plate number. (See Trial Transcript, pages 200-245, 246-278, attached). Furthermore, the license plate was registered to Defendant's girlfriend, the police found the vehicle parked outside of Defendant's residence, and Defendant admitted to police that he had driven the vehicle. (See Trial Transcript, pages 3 13-316, 321-323, 328, attached). Therefore, the Court is not satisfied that but for counsel's actions, the result of the jury's verdict would have been different. As such, Defendant is not entitled to relief and ground 8 is denied. . . . . .

(Resp. Ex. 19 at 7-8).

Even if the testimony implicated hearsay, nonetheless, Leon did not demonstrate his counsel was constitutionally obliged to object in order to be reasonably effective. By not objecting to the testimony, counsel let stand testimony showing Gonzalez had indicated she loaned her car to another individual, Hami Al-Ghamdi "around 2:35 p.m." (Resp. Ex. 1, V 4 T 345) However, the police report indicated Leon was the individual Gonzalez had said had the car all day. (Resp. Ex. 1, V 4 T 346) Although the retained attorney at the evidentiary hearing did not agree with the strategy of not making a hearsay objection, Leon failed to demonstrate that not one reasonably competent attorney could decide to forego a hearsay objection under the circumstances. On cross-examination of the officer, his counsel elicited that he had testified during his deposition Gonzalez said she gave the car to Al-Ghamdi at 2:35 p.m. (Resp. Ex. 1, V 4 T 351) Although the officer explained he was mistaken, Leon fails to show not one reasonably competent attorney could decline to object

on hearsay grounds in order to garner support for a claim Leon had been misidentified as the perpetrator.

The deficiency prong need not be addressed because the ground can be denied on *Strickland*'s prejudice prong. In view of the reliable eyewitness testimony of the victims, it is objectively reasonable to conclude there was no reasonable probability of a different outcome had counsel objected on grounds of hearsay as Leon proposed.

Ground eight does not warrant habeas relief.

GROUND NINE

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO CALL AS A WITNESS, HANI AL-GHAMDI, THE ORIGINAL SUSPECT IN THE INSTANT CASE.

Leon faults his counsel for not calling Hani Al Ghamdi as a witness on behalf of the defense. In his supporting facts, he indicates that during his trial, his counsel spoke with Al Ghamdi and dismissed him as a witness. This ground is exhausted to the extent alleged in Leon's rule 3.850 motion and raised in his collateral appeal. Afforded evidentiary development on his ground, Leon chose not to present testimony thereon at the state evidentiary hearing. In denying ground nine of his rule 3.850 motion after the evidentiary hearing, the postconviction court held he failed to meet his burden. Leon failed to demonstrate his counsel was constitutionally obliged to call the witness in order to be reasonably effective. At least one reasonably competent attorney could forego the risk that by presenting Al-Ghamdi, the state could call him and elicit testimony that he was not the perpetrator.

The ground can be denied on *Strickland*'s prejudice prong without addressing the

deficiency prong. Leon failed to establish his factual assertions, which were rejected by the state court. He does not overcome the state's implicit findings of fact in such regard by clear and convincing evidence. 28 U.S.C. 2254(e)(1). Leon did not call the witness at the state hearing and establish he would have, either through appearance or his testimony, credibly and materially undercut the victim's identification testimony.  Accordingly, Leon failed to demonstrate there was any reasonable probability of a different outcome had counsel called the witness at trial. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground nine does not warrant habeas relief.

GROUND TEN

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO OBJECT OR CORRECT THE STATE PROSECUTOR WHEN IT MISLED THE JURY WITH IMPROPER COMMENTS ABOUT THE EVIDENCE, DURING CLOSING ARGUMENTS WHICH WAS PREJUDICIAL TO THE PETITIONER.

Leon claims his counsel rendered ineffective assistance by not objecting to remarks of the prosecutor during closing argument. This ground is exhausted to the extent alleged in his rule 3.850 motion as a claim of ineffectiveness of counsel and raised on postconviction appeal. Leon was given an opportunity to test his ground at the state evidentiary hearing, and he did not establish support for his claim. With regard to his underlying claim of improper comments, he raised his claim in state law terms in his rule 3.850 motion. In Florida, counsel is permitted wide latitude in arguing to a jury. E.g., *Breedlove v. State*, 413 So. 2d 1 (Fla. 1982). Leon failed to show that not one reasonably

competent attorney could conclude the subject closing comments did not fall within the ambit of fair comment on the evidence adduced at trial.

The deficiency prong need not be reached because it is objectively reasonable to dispose of the ground on the prejudice prong of *Strickland.* To the extent Leon relies on his underlying state law arguments, the state courts did not find the trial court would have been obliged to grant the proposed objection or a mistrial. Leon claims the state's comments were misleading. However, as pointed out, Leon afforded the opportunity, did not develop his factual allegations as to the victims' prior descriptions. Pursuant to 28 U.S.C. § 2254(e)(2), Leon is foreclosed from developing at a federal evidentiary hearing factual assertions he did not timely present to the state postconviction and appellate courts.

In his rule 3.850 motion, Leon did not specifically claim his counsel was ineffective for not objecting to the prosecutor's remarks on federal due process grounds. Any claim in that regard amounts to a new assertion of ineffectiveness of counsel that is now barred by the two-year limit of rule 3.850 and the state's successive petition bar.[11]

Furthermore, this claim has no merit. The postconviction court would not have been obliged to conclude there was any constitutional error based on the prosecutor's remarks. It can be reasonably determined from the state record, the prosecutor's comments challenged by Leon collaterally, in context and entirety, were permissible comments on the evidence adduced at trial.

In addition, even if counsel had objected to the prosecutor's remarks, there was no

---

[11] If a petitioner asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992); *Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir.), *reh. denied*, 51 F.3d 1052 (11th Cir. 1995).

reasonable possibility that the jury would have reached a different conclusion in light of the unequivocal and reliable identification testimony of the victims. The state decision resulted in a reasonable application of *Strickland* and a reasonable determination of the facts in light of the evidence.

Ground ten does not warrant habeas relief.

GROUND ELEVEN

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO CALL AS A WITNESS HIS OWN INVESTIGATOR, KORI ANDERSON.

Leon faults his counsel for not calling his private investigator as a defense witness. This ground is exhausted to the extent raised in ground eleven of his rule 3.850 motion and on postconviction appeal. Afforded the opportunity, he failed to establish his factual support for this claim.  Leon chose not to call trial counsel or the investigator at the state evidentiary hearing, and the testimony of the lawyer he retained did not demonstrate trial counsel was constitutionally required to call the investigator at trial in order to be reasonably effective.

 As the postconviction court held, the ground can be denied on *Strickland's* prejudice prong. In denying relief on ground eleven of his rule 3.850 motion, the postconviction held, in relevant part, as follows:

> In ground 11, Defendant claims that counsel was ineffective for failing to call his own investigator (employed by the public defender's office) to testify as a witness. Specifically, Defendant alleges that the investigator obtained a different description of the suspect than that which the victims had previously given to law enforcement, and that this testimony could have established reasonable doubt. Defendant also argues that during defense counsel's deposition, counsel testified that he would have called this investigator if she did have such information, but that he could not recall having done so or not. Defendant claims this was highly prejudicial to his defense, as misidentification was the heart of Defendant's case.

During the evidentiary hearing, Defendant called a board certified criminal trial attorney who testified that while he did not feel that failure to call the investigator, on its own, amounted to ineffective assistance of counsel, failure to call this witness added to counsel's incompetency. (See September 12, 2006 Transcript, page 12, attached).

The Court finds that counsel was not ineffective for failing to call the public defender's investigator to testify for the defense, as Defendant has failed to meet his burden under Strickland. Review of the record reflects that during trial, defense counsel cross-examined both Witness Johnson and Witness Daniels as to the descriptions they gave to this investigator. (See Trial Transcript, pages 242-243 and 270-271, attached). Therefore, counsel presented to the jury the fact that there were variations among the victims' descriptions given to the investigator and to the police. Had counsel called this investigator to testify, it would not have changed the outcome of trial. Therefore, Defendant is unable to demonstrate, pursuant to *Strickland*, that counsel was deficient for failing to call the public defender's investigator as a witness or that Defendant suffered prejudice as a result. As such, Defendant is not entitled to relief and ground 11 is denied. . . . .

(Resp. Ex. 19 at 8-9).

Leon did not establish at the state evidentiary hearing that the investigator would have given testimony credibly calling into question the victims' identifications. Title 28 U.S.C. § 2254(e)(2) forecloses development of his factual assertions he did not pursue in a timely manner in the state courts. Moreover, as the state court observed, Leon's trial counsel capably cross-examined the victims regarding the descriptions they gave to the investigator and police, and Leon failed to demonstrate that had his counsel also called the investigator, there was any reasonable probability of a different outcome. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground eleven does not warrant habeas relief.

GROUND TWELVE

INEFFECTIVE   ASSISTANCE   OF   COUNSEL,   MANIFEST

-47-

INJUSTICE/ACTUAL INNOCENCE; COUNSEL FAILED TO OBJECT AND MOVE FOR A MISTRIAL ON THE BASIS THAT THE TRIAL COURT IMPROPERLY IMPLIED THAT THE PETITIONER WAS GUILTY.

Leon claims his counsel rendered ineffective assistance by not objecting to the state court's alleged implication he was guilty. This ground is procedurally barred because Leon did not brief this issue with specific argument in his collateral appeal. In summarily denying ground twelve of his rule 3.850 motion, the postconviction held, in relevant part, as follows:

>In ground 12, Defendant alleges counsel was ineffective for failing to object to or move for a mistrial because the Court improperly implied that Defendant was guilty. As supporting facts, Defendant quotes the record, where the Court orders defense counsel to remain at the podium, particularly when the witness is a child. Defendant states, "There is no doubt that the Court's actions in restricting Defense Counsel and not the Prosecution, in front of the jury, had an adverse affect on the Jury's minds. Those actions deprived the Defendant of a fair trial and shifted the burden on the Defendant to prove his innocents [sic]." (See Motion, Supporting Facts A, p. 28).

>Defendant's statement, "There is no doubt that the Court's actions in restricting Defense Counsel and not the Prosecution, in front of the jury, had an adverse affect on the Jury's minds," is a mere conclusory statement based on nothing but his assumption. Furthermore, Defendant has failed to demonstrate how counsel performed deficiently or how he was prejudiced. Since he has not met the Strickland test, ground 12 is denied.

(Resp. Ex. 18 at 10).

Because Leon's collateral appeal was after an evidentiary hearing, he was required to brief his ground with specificity. His decision not to do so resulted in a waiver and default of his ground. *Simmons, Duest, supra.* He does not make the required showing to excuse his default.

Alternatively, on the merits, Leon did not allege a basis from which counsel could make a meritorious objection on the grounds proposed. As a threshold matter, he did not plead facts showing the state court had implied Leon was guilty in any regard.

The claim fails scrutiny under *Strickland's* prejudice prong. His conclusory allegations failed to set forth facts, which, even if adduced, would demonstrate there was any reasonable probability of a different outcome had his counsel objected on the grounds proposed. The state decision resulted in a reasonable application of Strickland under either prong.

Ground twelve does not warrant habeas relief.

GROUND THIRTEEN

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO MOVE FOR A NEW TRIAL ON THE GROUND THAT THE WEIGHT OF THE EVIDENCE WAS UNRELIABLE AND COULD NOT SUPPORT THE PETITIONER'S CONVICTION.

Leon faults his counsel for not moving for a new trial on grounds the weight of the evidence was unreliable. This ground is procedurally barred because Leon chose not to brief it with specific argument thereon in his postconviction appeal. In summarily denying ground thirteen of his rule 3.850 motion, the postconviction court held, in relevant part, as follows:

>    Defendant alleges that counsel was ineffective for failing to object or move for a new trial on the ground that the weight of the evidence was unreliable and could not support the defendant's conviction. Specifically, Defendant alleges that counsel instead moved for a judgment of acquittal, arguing that the evidence taken in light most favorable to the State, did not prove Lewd and Lascivious Exhibition, but a lesser included offense of exposure of sexual organs. Defendant further alleges that the weight of the identification testimony was not credible, and but for counsel's failure to move for a new trial on the ground that the weight of the evidence was unreliable and could not support Defendant's conviction, the outcome of the proceedings may have been different or a proper review of this issue could have been preserved for appellate review. As supporting facts, Defendant quotes the record, where the victim testified that none of the photos presented to the victim in a photopack looked like the Defendant, but Defendant's picture gave her an eerie feeling. Defendant also quotes the

record, where the victim testified that she did not get a good look at Defendant's face, that she was not wearing glasses and could not see far away, and that Defendant looked different from the way he looked in his photo.

However, a review of the transcript reflects that the victims' testimony indicates that the weight of the victims' identification of the Defendant is credible:

> THE STATE: When you looked at the six pictures did you, in fact, see the person who committed this offense on you in one of those six pictures?
>
> VICTIM K.J.: Yes, sir.
>
> THE STATE: Is there any doubt in your mind that the person you looked at in the picture was the person who did this?
>
> VICTIM K.J.: No, sir.

(Transcript, October 15, 2001, P. 221, attached).

The trial transcript further proves the victims' identification of Defendant to be credible:

> THE STATE: Now, the person, just so we're clear, you picked number six. Is that the person who drove up the first time in that, as you testified, that old blue car and said—asked you if you wanted to have a good time while his hand was on his penis?
>
> VICTIM K.J.: Yes, sir.
>
> THE STATE: Is that also the same person situated in position number six who had repulled up while you were with Arian and said he was willing to give a hundred dollars to you?
>
> VICTIM K.J.: Yes, sir.
>
> THE STATE: Now that person who you identified in the photopack on 5/8 of this year, is that person also in the courtroom here today?
>
> VICTIM K.J.: Yes, sir.

THE STATE: Okay. I'd like you to look around the courtroom and point and describe an article of clothing the person who did this to you is wearing?

VICTIM K.J.: The blue suit.

THE STATE: Your Honor, let the record reflect the witness identified the Defendant.

THE COURT: The record will so reflect.

THE STATE: The person who is here in court before you, is that the same person you picked out of the photopack?

VICTIM K.J.: Yes, sir.

THE STATE: Is that the same person you saw twice on that day?

VICTIM K.J.: Yes, sir.

(Transcript, October 15, 2001, p. 228-29, attached).

Furthermore, the second victim's identification of Defendant is also credible:

THE STATE: Now, let me ask you, the person who did this to you back on the 18 of April, is that person in the courtroom here today?

VICTIM A.D.: Yes, sir.

THE STATE: Please point to him and describe an article of clothing he's wearing?

VICTIM A.D.: He's to my left and he has on a blue suit with a blue tie.

THE STATE: Let the record reflect the witness identified the Defendant.

THE COURT: Yes, it will.

(Transcript, October 15, 2001, p. 265, attached).

Consequently, the Court finds Defendant fails to show how counsel

performed deficiently or how he was prejudiced, and as such, ground 13 of Defendant's motion is denied.

Defendant also alleges that the victims' identification of Defendant lacks credibility because the photopack used to identify the Defendant as the perpetrator was unduly suggestive in that he was the "only non-Hispanic with neatly trimmed goatee and wet looking head of hair and very light skinned, where the other individuals were Mexican looking with darker skin, thicker facial hair and thick and nappy head of hair." (See Motion, Supporting Facts A, p. 29). However, the Court has already addressed this issue in ground 3.

(Resp. Ex. 18 at pgs. 11-13)

On appeal after an evidentiary hearing, Leon did not advance argument on his issue, and as a result, he abandoned and defaulted his ground. *Simmons, Duest*. He does not make the requisite showing to excuse his default.

On the merits, Leon's claim does not warrant relief. Leon does not overcome the presumption of correctness of the factual findings of the Florida court in denying his claim. 28 U.S.C. § 2254(e)(1). Nor did he show his counsel had overlooked a meritorious basis for seeking a new trial based on the weight of the evidence under state law. In Florida, a motion for new trial pursuant to Fla.R.Crim.P. 3.600(a)(2) enables the trial judge to weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror. *See Tibbs v. State*, 397 So.2d 1120 (Fla.1981) (the court distinguished between the sufficiency of the evidence, on the one hand, and the weight and credibility of the evidence, on the other), *aff'd,* 457 U.S. 31 (1982). If the trial judge determines that the verdict of guilty is against the weight of the evidence, which is not a determination that the evidence was legally insufficient so as to require an acquittal, the trial judge's disagreement with the jury's weighing of the evidence allows the judge to order a new trial. *Tibbs,* 397 So.2d at 1123.

In Leon's case, the Florida courts did not find his counsel had overlooked a meritorious basis for claiming the weight of the evidence was unreliable under state law. Accordingly, Leon cannot show any deficiency in counsel's foregoing his state law arguments.

The ground can be denied on *Strickland*'s prejudice prong without reaching the deficiency prong. Leon does not plead a basis upon which to conclude the state court would have been obliged to grant the proposed motion. It is objectively reasonable to conclude, in light of the postconviction court's factual findings, there was no reasonable probability of a different outcome had trial counsel sought a new trial on the grounds Leon alleged. The state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground thirteen does not warrant habeas relief.

GROUND FOURTEEN

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO ADVISE THE PETITIONER THAT HE COULD HAVE ACCEPTED THE PLEA AND RESERVE HIS RIGHT TO APPEAL THE DENIAL OF THE MOTION TO SUPPRESS A LEGALLY DISPOSITIVE ISSUE.

Leon claims his counsel failed to advise him that could have accepted the plea offer and reserved the right to appeal the denial of his motion to suppress as dispositive. This ground is procedurally barred because Leon did not brief his claim in his postconviction appeal. Leon raised his claim in ground fourteen of his rule 3.850 motion. Afforded an opportunity to develop his claim at the evidentiary hearing, he did not do so. On appeal, he abandoned his ground by not briefing it with specific argument. *Simmons, Duest*. He does not make the required showing to excuse his default.

Alternatively, on the merits, Leon did not establish his factual support for this claim. Given the opportunity, he did not adduce testimony regarding his claim, and he failed to establish any deficiency in counsel's advice regarding the state's offer.

Furthermore, his ground can be denied on *Strickland*'s prejudice prong without reaching the deficiency prong. Leon did not demonstrate his underlying suppression issue was meritorious. Moreover, Leon's comments prior to trial reflect he was concerned about potential exposure to civil commitment consequences. (Resp. Ex. 1, V 2, T 7). Leon denied committing the offenses, expressed a desire for a jury trial, and in his rule 3.850 proceeding failed to demonstrate there was any reasonable probability he would have pled guilty instead of trying his case. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground fourteen does not warrant habeas relief.

## GROUND FIFTEEN

NEWLY DISCOVERED EVIDENCE, MANIFEST INJUSTICE/ACTUAL INNOCENCE: PETITIONER DISCOVERED NEW EVIDENCE AFTER HIS TRIAL WHICH COULD HAVE ALTERED THE OUTCOME OF THE TRIAL.

Leon claims he discovered new evidence in his case which would have altered the outcome of his case. He asserts that after his trial, he learned from his mother the testimony of his brother was untrue. The state postconviction court applied Florida's newly discovered evidence standard in summarily denying ground sixteen of his rule 3.850 motion.

This ground does not state a cognizable claim for federal habeas corpus relief. The claimed existence of newly discovered evidence relevant to guilt of a state prisoner is not

a ground for relief in a federal habeas corpus proceeding. *See e.g., Fuster-Escalona v. Florida Dept. of Corrections*, 170 Fed.Appx. 627, 630 (11th Cir. 2006)(state prisoner claiming "newly discovered" evidence existed suggesting methodology utilized to test for the presence of gonorrhea in his son was unreliable failed to assert a cognizable federal constitutional claim under facts and circumstances of case).

Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993). A claim of innocence is not itself a constitutional claim. Rather, it is a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Schlup*, 513 U.S. at 315. To satisfy *Schlup*, a petitioner must first "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.* at 324. The petitioner must then demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. However, the fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence. The Supreme Court has not held it extends to freestanding claims of actual innocence.

Here, the exception is inapplicable because Leon does not seek to excuse a procedural default so that he may bring a defaulted constitutional claim challenging his conviction. He seeks habeas relief, in essence, on the premise that a witness's alleged information satisfies Florida's newly discovered evidence standard. He is not entitled to federal review of such a claim. The state court affirmance of the postconviction court's

ruling settles that, as a matter of Florida law, Leon did not meet both prongs of the state's newly discovered evidence standard.

Further and alternatively, Leon did not fairly present his ground by raising the constitutional dimension of his claim in his postconviction motion and then on collateral appeal. Leon pressed his newly discovered evidence issue in the Florida courts in terms of state law governing newly discovered evidence, which did not suffice to exhaust a federal question. *Duncan, supra.* He is foreclosed from raising his ground in constitutional terms in another rule 3.850 motion by two-year limit of rule 3.850, as well as the state's successive petition and law of the case doctrines. Even if he were to attempt to promote cause to excuse a default of an identifiable federal claim, any such cause allegation is itself procedurally barred.[12]

Leon failed to make a threshold showing under §§ 2254(d) and (e). As noted, claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera*, 506 U.S. at 400; *see also, Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002)("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial."). To the extent Leon promotes a free-standing claim of actual innocence, he cannot show the state decision was contrary to or an unreasonable application of *Herrera*.

Even if, arguendo, a free-standing actual innocence claim by a defendant not under

---

[12]   *Cf., Mize v. Hall,* 532 F.3d 1184, 1195 (11th Cir. 2008)(observing it is doubtful that it is possible to procedurally default a freestanding actual innocence claim).

sentence of death is cognizable any such claim by Leon fails. To prevail on such a claim, the petitioner would have to meet an "extraordinarily high" standard. *Herrera*, 506 U.S. at 426. The petitioner must show new facts unquestionably establishing his innocence. *Schlup*, 513 U.S. at 317. Leon has no such evidence. The Supreme Court has never decided what the precise burden of proof for a freestanding actual innocence claim would be. However, the Court has indicated that it would necessarily be more difficult to establish a freestanding actual innocence claim than it is to establish actual innocence under the fundamental miscarriage of justice exception to the procedural default doctrine. *See House v. Bell*, 547 U.S. 518 (2006). To satisfy this lesser standard (which itself applies "only in the extraordinary case," House, 126 S. Ct. at 2077), Leon would have to demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In other words, he would have to show it is probable that, given the new evidence, no reasonable juror would have convicted him. *See House*, 126 S. Ct. at 2077.

Post-verdict, Leon stands not as a presumptively innocent person, but as a person who is conclusively guilty. *Schlup*, 513 U.S. at 326, n. 42 ("Having been convicted by a jury of a capital offense, *Schlup* no longer has the benefit of the presumption of innocence."). Leon does not allege new facts unquestionably establishing his innocence as contemplated by *Schlup*.

Leon does not suggest his mother was an eyewitness to the lewd acts the victims witnessed. The matters he alleged were, at most, matters of potential impeachment of the brother, and the alleged information does not establish Leon's actual innocence. Moreover, none of his allegations trumps the substantial evidence of his guilt tested at trial.

Not alleging and showing a free-standing actual innocence claim is cognizable on habeas review and in any case not meeting the extraordinarily high standard which would apply, Leon is left with *Herrera*, that is: federal habeas does not lie for errors of fact. Because Leon fails to make a threshold showing of actual innocence, he is not entitled to an evidentiary hearing on his claim. *See Melson v. Allen,* 548 F.3d 993, 1004 (11th Cir. 2008)(concluding district court properly denied petitioner's motions for discovery and an evidentiary hearing where he failed to make a threshold showing of actual innocence, citing *Sibley v. Culliver*, 377 F.3d 1196, 1206 (11th Cir. 2004)).

Ground fifteen does not warrant habeas relief.

GROUND SIXTEEN

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: COUNSEL FAILED TO HAVE THE COURT INSTRUCT THE JURY ON THE ALIBI INSTRUCTIONS.

Leon claims his trial counsel rendered ineffective assistance by not having his jury instructed on the defense of alibi. This ground is exhausted to the extent Leon raised the claim in his rule 3.850 motion and on appeal after the evidentiary hearing. Afforded an opportunity to develop his ground at the state evidentiary hearing, Leon failed to demonstrate that his counsel was constitutionally obliged to request an instruction on alibi in order to be reasonably effective. In his rule 3.850 motion, Leon framed his underlying jury instruction issue in state law terms, and given that the Florida courts did not conclude Leon was entitled to the proposed instruction under state law, Leon cannot show his counsel was deficient for foregoing a request for such instruction.

The ground also fails under *Strickland's* prejudice prong. Each victim was unequivocal in her identification of Leon as the individual who perpetrated the lewd acts in

each's presence. In view of their compelling testimony, it is objectively reasonable to conclude that had counsel sought an instruction on alibi, there was no reasonable probability of a different outcome. The state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground sixteen does not warrant habeas relief.

GROUND SEVENTEEN

INEFFECTIVE ASSISTANCE OF COUNSEL, MANIFEST INJUSTICE/FACTUAL INNOCENCE: VIEWED CUMULATIVELY, COUNSEL'S IDENTIFIED ERRORS AND OMISSION, AS DESCRIBED WITHIN THIS PETITION FOR WRIT OF HABEAS CORPUS, JUSTIFIED THE GRANTING OF THIS PETITION.

Leon raises a cumulative impact claim collecting his various claims of omission of his trial counsel. Leon cannot gain review of defaulted claims by referring to them in the form of a cumulative impact claim. Each of his claims which was not briefed with specific argument thereon is waived and abandoned.

Moreover, this ground does not provide an independent basis for relief. No Supreme Court authority recognizes "cumulative error" as a separate violation of the Constitution or as a separate ground for habeas relief. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.)("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied,* 123 S.Ct. 1621 (2003).

Alternatively, on the merits, the court state decision on Leon's cumulative impact claim "passes AEDPA muster" under either of *Strickland*'s prongs. None of the claims bundled into one satisfies both prongs of *Strickland,* and conducting a cumulative impact

analysis cannot secure for Leon a different result.[13] Singularly or cumulatively, the allegations of proposed deficient conduct summarily denied or after evidentiary proceedings were conducted do not meet *Strickland*'s deficiency prong, and would not have, within a reasonable probability, affected the outcome of his case.

Ground seventeen does not warrant habeas relief.

## GROUND EIGHTEEN

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, MANIFEST INJUSTICE/ACTUAL INNOCENCE: APPELLATE COUNSEL FAILED TO INFORM THE STATE APPELLATE COURT THAT PETITIONER'S RECORD FOR APPEAL WAS INCOMPLETE AND COULD THEREFORE NOT PROPERLY RAISE OR ARGUE PETITIONER'S FOURTH AMENDMENT CLAIM.

Leon claims his appellate counsel rendered ineffective assistance by not arguing the record in his direct appeal was incomplete. This ground is exhausted to the extent Leon raised it in his rule 9.141 petition. Whether his allegation is analyzed under the procedural default doctrine, as shown, *supra*, or as a substantive claim of ineffective assistance, the claim is without merit.

Applying the AEDPA deferential standards, Leon must show the state court's decision resulted in an unreasonable application of *Strickland*.[14] The standard of proof and review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. *Duest v. Singletary*, 967 F.2d 472, 477 n.4

---

[13] *E. g. Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)(Because "the sum of various zeroes remains zero," the claimed prejudicial effect of the trial attorneys' cumulative errors did not warrant habeas relief).

[14] *See Shere v. Sec. Dept. of Corrections*, 537 F.3d 1304 (11th Cir. 2008)(citations omitted)("Shere is entitled to federal habeas relief only if the Florida Supreme Court's resolution of his ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, clearly established federal law, as set forth by the United States Supreme Court. 28 U.S.C. § 2254(d).")

(11th Cir. 1992). Leon must first show that his appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259 (2000). Appellate counsel who files a merits brief need not and should not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983)(effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). Eleventh Circuit precedent is in accord. There is no duty to raise issues on appeal which have little or no chances of success. Thus, appellate counsel is not required to raise meritless issues, *Card v. Dugger,* 911 F.2d 1494, 1520 (11th Cir. 1990), or issues which were not preserved and are procedurally barred on appeal, *Bertolotti v. Dugger*, 883 F.2d 1503, 1523 (11th Cir. 1989), *cert. denied*, 110 S.Ct. 3296 (1990); *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991).

The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith v. Robbins*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

To demonstrate prejudice, Leon must establish it was reasonably probable that, but for counsel's error, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 286. He must satisfy both prongs of the *Strickland* test in order to prevail on his claim. *Id.* at 289. Leon did not show his suppression issue was preserved for review. Thus, he demonstrated no deficiency in counsel's performance with regard to the record on appeal.

The ground can be disposed of on *Strickland*'s prejudice prong. Afforded the opportunity to test his motion to suppress in pretrial suppression proceedings, he failed to

establish his factual support. Given the required deference to the state court's factual findings in denying the motion to suppress, it is objectively reasonable to conclude that even if the additional transcript had been included in the record, Leon failed to show it was reasonably probable he would have prevailed in his appeal.

Finally, Leon is barred by 28 U.S.C. § 2254(e)(2) from seeking an evidentiary hearing in this proceeding on any factual allegation not timely presented the Florida courts. Failure to develop any such factual assertion not alleged in state court in support of his grounds is solely attributable to his lack of diligence.

Ground eighteen does not warrant habeas relief.

LEON'S REPLY

Leon does not raise any new persuasive arguments in his reply.

Accordingly, the Court orders:

That Leon's petition is denied.  The Clerk is directed to enter judgment against Leon and to close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong,"
*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on August 31, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Adrian Warren Leon